RECEIVED
IN LAKE CHARLES, LA

SEP - 7 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TIMOTHY LYLE TAYLOR, ET AL. | : | DOCKET NO. 07-0097 |
| VS. | : | JUDGE MINALDI |
| SHETLER LINCOLN MERCURY LTD, ET AL. | : | MAGISTRATE JUDGE WILSON |

### REPORT AND RECOMMENDATION

Before the court is plaintiffs' Motion to Remand [doc. # 22].[1]

This is a survival and wrongful death action which was originally brought in the 14th Judicial District Court for Calcasieu Parish, Louisiana. All of the defendants, with the exception of Shetler Lincoln Mercury, Ltd. (Shetler), joined in removing this action to this court based on their contention that this court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332. Shetler is a citizen of Louisiana as is at least one plaintiff. Accordingly, if the citizenship of Shetler is to be considered the complete diversity required for this court to have subject matter jurisdiction is lacking. *See Carden v. Arkoma Associates*, 110 S.Ct. 1015 (1990). Defendants have alleged that the citizenship of Shetler can be disregarded in assessing jurisdiction because Shetler was fraudulently/improperly joined.[2] Plaintiffs have filed the present motion contending that remand is required because: (1) both Shetler and Firestone Tire & Service (Firestone) are

---

[1] The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(B).

[2] Traditionally the term "fraudulent joinder" has been used. The Fifth Circuit now also refers to "fraudulent joinder" as "improper joinder." *See Smallwood, infra* at 571 n.1. Obviously, this leads to some confusion. In this report and recommendation "fraudulent/improper joinder is used to refer to the traditional "fraudulent joinder."

considered citizens of Louisiana and, therefore, non-diverse; (2) Shetler failed to timely join in or consent to removal; and (3) Shetler was not fraudulently/improperly joined so that its status as a non-diverse defendant precludes jurisdiction.

Citizenship of Firestone

Plaintiffs contend that Firestone must be considered to be a citizen of Louisiana for the purposes of assessing whether this court has diversity jurisdiction. This contention is based on the fact that Plaintiffs alleged that Firestone was "domiciled" in Louisiana, and Firestone failed to deny this allegation in its answer. Assuming for the sake of argument that the removing defendants are bound by the Plaintiffs' allegation of Firestone's "domicile" this does not determine Firestone's "citizenship" for purposes of assessing diversity. Firestone's corporate disclosure statement indicated that Firestone is not a separate legal entity, but is a business of Bridgestone Firestone Retail and Commercial, LLC. (Doc. 24). The sole member of Bridgestone Firestone Retail and Commercial, LLC is Bridgestone Americas Holding, Inc., (Bridgestone) a Nevada corporation. *Id.* Its principal place of business is Tennessee. ¶ 7 Notice of Removal.

*Carden v. Arkoma Associates*, 110 S.Ct. 1015 (1990) addressed the issue of how an unincorporated association should be treated when assessing the existence of diversity jurisdiction. The court noted that it had often had to consider the status of artificial entities created by state law insofar as that status bore upon the existence of federal jurisdiction. It also noted that with the exception of corporations and a *sociedad en comandita* created under Puerto Rican civil law, it had "firmly resisted" treating such entities as "citizens." *Id.* at 1018. In holding that a limited partnership was not a "citizen" the court specifically rejected the argument that the court should look behind the particular entity's characterization as incorporated versus

unincorporated. *Id.* The court went on to state:

> There could be no doubt, after *Bouligny*, that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called "[t]he tradition of the common law," which is "to treat as legal persons only incorporated groups and to assimilate all others to partnerships." *Id.*
> . . . .
> The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision. *Id.* at 1022

The Fifth Circuit has not specifically addressed the issue of whether a limited liability company should be treated as a "citizen" for purposes of diversity jurisdiction. It has, however, consistently treated other unincorporated associations as having the citizenship of each of its members. *See Corfield v. Dallas Glen Hill LP*, 355 F.3d 853 (5th Cir. 2003) (limited liability partnership); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877 (5th Cir. 1993) (Lloyd's plan); *Temple Drilling Co., v. Louisiana Ins. Guar. Ass'n*, 946 F.2d 390 (5th Cir. 1991) (Louisiana Insurance Guaranty Association); *Hummel v. Townsend*, 883 F.2d 367 (5th Cir. 1989) (Reorganized Church of Jesus Christ of Latter Day Saints). Every other circuit that has considered the treatment of limited liability companies has concluded that they are not "citizens" for purposes of diversity jurisdiction. *Wise v. Wachovia Securities, LLC*, 450 F.3d 265 (7th Cir. 2006); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) (". . . every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction."); *Pramco v. San Juan Bay Marina*, 435 F.3d 51 (1st Cir. 2006) (". . . every circuit to consider this issue has held that the citizenship of a limited liability company is determined by

the citizenship of all of its members."); *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020 (11th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dept. Stores*, 357 F.3d 827 (8th Cir. 2004); *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed.Appx. 731 (6th Cir. 2002); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48 (2nd Cir. 2000). We conclude that Firestone, as an unincorporated association, is not considered to be a citizen for purposes of diversity jurisdiction. It is considered as having the same citizenship as its sole member, Bridgestone. Thus, Firestone is treated as if it were a citizen of Nevada and Tennessee. It is completely diverse from all Plaintiffs.

Fraudulent/Improper Joinder of Shetler

Plaintiffs' remaining grounds for remand both turn on whether Shetler was fraudulently/improperly joined. If so, it was not required to join in or consent to removal. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Further, its presence will not destroy diversity jurisdiction. *Id.*

Once a case has been removed, the burden lies with the removing party to prove that the court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc., supra.* (citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). One prerequisite to removal is that this court must have original jurisdiction. 28 U.S.C. § 1441(a). If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by, Illinois Cent. R. Co. v. Smallwood*, ____ U.S. ____, 125 S.Ct. 1825 (4/18/2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th

Cir. 2003)). In the case *sub judice*, there are no allegations of actual fraud. Accordingly, our focus is the second basis for improper joinder. *See, Travis, supra.*

The focus of the court's inquiry is on the joinder of the forum state citizen, not on the merits of Plaintiff's case. *Smallwood, supra* at 573. In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood, supra.*

The court may resolve this issue in one of two ways:   1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the in-state/non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra.* Ordinarily, if Plaintiff survives the 12(b)(6) analysis there is no improper joinder. *Id.* The "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id* at 573-74.[3] The motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Id.* at 574. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete (and/or removal is improper), and remand is required. *Id.*

---

[3] In other words, facts that can be easily disproved if not true. *Id.*

This case arises out of a fatal, single vehicle accident that occurred September 22, 2005, in Mississippi. It is alleged that the decedent, Tommy Gene Taylor, was driving a 1998 Mercury Mountaineer and that when he "attempted to avoid a slowing vehicle" his vehicle "lost its stability" and rolled over. Mr. Taylor and his wife died in the accident. Plaintiffs are their surviving children.

Plaintiffs have alleged that the accident was caused by defects in the design and composition of the Mountaineer and by a failure to warn of its alleged propensity to roll over. Shetler sold the vehicle to the Taylors in 1997. The petition alleges, in part:

10.

Shelton [sic] Lincoln Mercury LTD, its salesmen, management and staff deceptively induced TOMMY GENE TAYLOR and EMOGENE NORTON TAYLOR to purchase the Mountaineer by failing to disclose to TOMMY GENE TAYLOR and EMOGENE NORTON TAYLOR the redhibitory defects associated with the Mountaineer, particularly its instability and roll-over characteristics, all of which constitutes negligence and fault.

11.

Upon information and belief, had TOMMY GENE TAYLOR and EMOGENE NORTON TAYLOR been informed by Shelton [sic} Linclon Mercury LTD and those for whom it is responsible that the Mountaineer was susceptible to instability, loss of control and/or roll-over during reasonably foreseeable driving conditions, the decedents would not have purchased the vehicle.

12.

Upon information and belief, SHELTON [sic] was aware of the defects contained in the BRIDGESTONE Firestone Wilderness A/T tires mounted on the Mountaineer, and/or serviced the tires on the Mountaineer, and failed to warn the decedents of the defective nature of the tires.

Plaintiffs clearly have not stated a claim under the Louisiana Products Liability Act (LPLA), LSA-R.S. 9:2800.51 *et seq.* The LPLA provides for the liability of "manufacturers."

Generally, a retail seller such as Shetler is not considered to be a "manufacturer" under the LPLA. See LSA-R.S. 9:2800.53(2). There are limited exceptions including: (1) a person that holds himself out to be the manufacturer (LSA-R.S. 9:2800.53(1)(a)); (2) a seller who exercised control over or influences the design, construction, or quality of the product (LSA-R.S. 9:2800.53(1)(b)); and (3) a seller of a product of an alien manufacturer under some circumstances (LSA-R.S. 9:2800.53(1)(d)). Plaintiffs have failed to state a claim against Shetler under the LPLA. F.R.C.P 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (internal quotes and citation omitted). Plaintiffs' allegations fall far short of giving defendants fair notice that they are claiming that Shetler qualifies as a manufacturer under the LPLA.

One result following from the conclusion that Plaintiffs have failed to state a claim against Shetler under the LPLA is that the Plaintiffs have other potential remedies available against Shetler. The LPLA provides that it "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LSA-R.S. 9:2800.52. Since Shetler is not a manufacturer Plaintiffs are not limited to the LPLA in asserting liability on the part of Shetler. Shetler can be responsible for damages in tort if it "knew or should have known that the product sold was defective, and failed to declare it." *Slaid v. Evergreen Indem., Ltd.*, 745 So.2d 793 (La.App. 2 Cir. 1999); *Adams v. Owens-Corning Fiberglas Corp.*, 923 So.2d 118, 123 (La.App. 1 Cir. 2005).

Plaintiffs have, in general, alleged that the Mountaineer was defective in that is was "subject to loss of control and stability and a roll-over while operating the vehicle under normal

and foreseeable conditions." Plaintiffs' Petition ¶ 7. The petition also alleged that Shetler "deceptively induced" the Taylors to purchase the Mountaineer by failing to disclose that the defects in the Mountaineer "particularly its instability and roll-over characteristics, all of which constitutes negligence and fault." Plaintiffs' Petition ¶ 10. While Defendants are correct in stating that Plaintiff do not specifically allege that Shetler had knowledge of the alleged defects in the Mountaineer the allegation that Shetler "deceptively induced" the Taylors "by failing to disclose" the defect necessarily implies knowledge on the part of Shetler.[4] We conclude that these allegations are sufficient to give Defendants fair notice that plaintiffs are asserting a tort claim against Shetler based on the contention that Shetler "knew or should have known that the product sold was defective, and failed to declare it."

Having concluded that Plaintiffs' petition states a tort claim against Shetler it is necessary that Defendants present summary judgment evidence identifying discreet and undisputed facts that would preclude recovery against Shetler. Defendants have failed to do so.[5] Therefore, we cannot say that there is no reasonable possibility of recovery against Shetler [6] Thus, complete diversity is missing and this court has no jurisdiction.

Plaintiffs further seek the award of costs, expenses, and fees incurred as a result of the removal. Presumably plaintiffs seek costs and fees pursuant to 28 U.S.C. § 1447. An order

---

[4] The petition does specifically allege that Shetler was aware of defects in the Bridgestone tires mounted on the Mountaineer. However, the petition fails to give any indication of the nature of those defects or how they may have contributed to the accident.

[5] Defendants do not argue that any tort claim against Shetler is barred by the Dealer's Warranty Disclaimer. In fact, such an argument would seem to be foreclosed by La.CC. Art. 2004.

[6] Having found that there is a reasonably possibility of tort liability on the part of Shetler it is unnecessary to consider whether or not Plaintiffs have a viable claim against Shetler based in redhibition.

remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.* 126 S.Ct. 704 (2005)

Here, Defendants removed the case by arguing that the non-diverse defendant was improperly joined. Ultimately, we have determined that Defendants failed to meet their burden. However, under the circumstances, we cannot conclude that Defendants lacked "objectively reasonable" grounds to remove the case.

The Fifth Circuit has recently recognized that a component of "costs" under § 1447(c) are the costs assessable under Fed.R.Civ.P. 54(d)(1)). *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004). Rule 54(d)(1) costs are not subject to the objective reasonableness test. *Id.* Rather, they "shall be allowed as of course to the prevailing party . . ." Fed.R.Civ.P. 54(d)(1). Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985). Removing defendant has not overcome this presumption.

For the foregoing reasons,

IT IS RECOMMENDED that plaintiffs' motion to remand [doc. # 22] be GRANTED.

IT IS FURTHER RECOMMENDED that Fed.R.Civ.P. 54(d)(1) costs be assessed against the removing defendant. 28 U.S.C. § 1447(c).[7]

---

[7] The costs are limited to those incurred in federal court that would not have been incurred had the case remained in state court. *Avitts v. Amoco Production Co.* 111 F.3d 30, 32 (5th Cir. 1997). The costs are as specified in 28 U.S.C. § 1920. The amount of costs shall be determined by

IT IS FURTHER RECOMMENDED that movants' requests for costs, fees, and expenses be otherwise DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of September, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

the Clerk of Court in the first instance. LR 54.3. An interactive version of AO Form 133 "Bill of Costs" can be found on the court's website: http://www.lawd.uscourts.gov/.